IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| WTG GAS PROCESSING, L.P., WTG ) | |
| SOUTH PERMIAN MIDSTREAM LLC, ) | |
| and DAVIS GAS PROCESSING, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff, the United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.     This civil action seeks injunctive relief and civil penalties from the Defendants (WTG Gas Processing, LP; WTG South Permian Midstream LLC; and Davis Gas Processing, Inc. (collectively referred to as "WTG" or the "Defendants")) for their alleged violations of requirements in the "Clean Air Act," 42 U.S.C. § 7401 *et seq*., to prevent accidental releases of hazardous air pollutants.

2.     The Complaint alleges, pursuant to Section 113(b)(2) of the Clean Air Act, 42 U.S.C. § 7413(b)(2), that the Defendants violated the Clean Air Act's "General Duty Clause" in Section 112(r)(1), 42 U.S.C. § 7412(r)(1), the "Risk Management Program" requirements in

1

Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and the implementing "Chemical Accident Prevention Regulations" (promulgated at 40 C.F.R. Part 68) at four of their natural gas processing plants in Texas.  These four facilities (the Defendants' "Natural Gas Plants") include the Defendants' East Vealmoor Gas Plant (located at 11703 East FM 846, Coahoma, Texas 79511), the Benedum Gas Plant (located at State Highway 1555, Midkiff, Texas 79755), the Shackelford Gas Plant (located at 7082 FM 880 South, Cisco, Texas 76437), and the Big Lake Treatment Plant (located at 189 Gas Plant Road, Big Lake, Texas 76932).

3.      The Defendants' violations stem, in part, from fatal releases of hazardous air pollutants at the East Vealmoor Gas Plant and the Big Lake Treatment Plant.  On November 1, 2015, a WTG employee at the East Vealmoor Gas Plant was fatally burned while re-lighting a flare (the "November 2015 Fire").  On April 14, 2018, a WTG employee at the Big Lake Treatment Plant died from exposure to hydrogen sulfide ($H_2S$) (the "April 2018 $H_2S$ Release").  Other accidental releases, caused by piping ruptures and resulting fires, occurred at the Benedum Gas Plant and Shackelford Gas Plant in 2012 and 2015.

4.      In response to these accidental releases, the EPA inspected the Defendants' Natural Gas Plants.  The violations alleged in this Complaint are based on the findings from the EPA's inspections.

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 7413(b) and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

6.      Venue is proper in this district pursuant to 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b), (c), and 1395 because the Defendants do business within this judicial district and actions giving rise to violations alleged in this Complaint occurred in this judicial district.

7.     The United States Department of Justice is authorized to bring this action on behalf of the EPA under 42 U.S.C. § 7605(a), and 28 U.S.C. §§ 516 and 519.

8.     Notice of the commencement of this action has been given to the State of Texas pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b).

## PARTIES

9.     Plaintiff is the United States of America, acting at the request of the EPA, an agency of the United States.

10.     Defendant WTG Gas Processing, LP is a limited partnership organized under the laws of the State of Texas and is doing business in this judicial district.

11.     Defendant WTG South Permian Midstream LLC is a limited liability company organized under the laws of the State of Texas and is doing business in this judicial district.

12.     Defendant Davis Gas Processing, Inc. is a corporation organized under the laws of the State of Texas and was doing business in this judicial district at all times relevant to the Complaint.

13.     Each Defendant is a "person" within the meaning of Clean Air Act Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e).

## THE DEFENDANTS' NATURAL GAS PLANTS

14.     Each of the Defendants' Natural Gas Plants is or, at all times relevant to the Complaint, was engaged in processing natural gas extracted from production wells (known as "field gas"). The Defendants use or, at all times relevant to the Complaint, used a variety of processes at the Natural Gas Plants to produce Y-grade petroleum products from natural gas (*e.g.*, propane, butane, condensate, and natural gas) or intermediates for those products.

3

15.     The East Vealmoor Gas Plant treats, dehydrates, and separates flammable natural gas and natural gas liquids from field gas.  At all times relevant to the Complaint, WTG Gas Processing, L.P. has owned and operated the East Vealmoor Gas Plant.

16.     Until it was shut down in 2021, the Big Lake Treatment Plant was engaged in natural gas liquids processing.  The plant used an amine sweetening unit to treat natural gas to remove $H_2S$ and carbon dioxide.  The treated gas was then compressed and sent via pipeline to downstream processing plants.  At all times relevant to the Complaint, Davis Gas Processing, Inc. owned and operated the Big Lake Treatment Plant.

17.     The Benedum Gas Plant uses a variety of processes to produce Y-grade petroleum products from natural gas, including cryogenic chillers and various product settling tanks.  At all times relevant to the Complaint, WTG South Permian Midstream LLC has owned and operated the Benedum Gas Plant.

18.     The Shackelford Gas Plant treats, dehydrates, and separates flammable natural gas and natural gas liquids from field gas.  At all times relevant to the Complaint, WTG Gas Processing, L.P. has owned and operated the Shackelford Gas Plant.

## GENERAL ALLEGATIONS

19.     At all times relevant to this Complaint, each Defendant was the "owner or operator" of one or more of the Defendants' Natural Gas Plants, within the meaning of Clean Air Act Section 112(a)(9), 42 U.S.C. § 7412(a)(9), the Clean Air Act's General Duty Clause, and the Chemical Accident Prevention Regulations.

20.     40 C.F.R. § 68.3 defines "owner or operator" as any person who owns, leases, operates, controls, or supervises a stationary source.  At all times relevant to this Complaint, each of the Natural Gas Plants was a "stationary source" as defined in 42 U.S.C. § 7412(r)(2)(C).

4

21.     At all times relevant to this Complaint, each of the Natural Gas Plants was subject to the Clean Air Act's General Duty Clause regarding the prevention of "accidental releases," as defined in Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and 40 C.F.R. § 68.3. Each of the Defendants' Natural Gas Plants produced, processed, handled, and/or stored "extremely hazardous substances," within the meaning of the General Duty Clause, including, but not limited to, carbon monoxide, glycol, $H_2S$, methanol, nitrogen oxides, sulfuric acid, and/or sulfur dioxide.

22.     At all times relevant to this Complaint, each of the Defendants' Natural Gas Plants produced, processed, handled, and/or stored more than threshold quantities of one or more flammable "regulated substances," as defined in Clean Air Act Section 112(r)(2)(B), 42 U.S.C. § 7412(r)(2)(B), and as also listed in 40 C.F.R. § 68.130, including, but not limited to, butane, ethane, iso-butane, methane, pentane, and propane.

23.     At all times relevant to this Complaint, each of the Defendants' Natural Gas Plants were "natural gas processing plants" that included "covered processes" as defined at 40 C.F.R. § 68.3 and within the meaning of 40 C.F.R. § 68.10(d) (and 40 C.F.R. § 68.10(i), effective as of February 19, 2019), such as storage tanks and processing vessels.

24.     40 C.F.R. § 68.3 defines "process" as any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or any combination of these activities.

25.     40 C.F.R. § 68.3 defines "covered process" as a process that has a regulated substance present in more than a threshold quantity as determined under 40 C.F.R. § 68.115.

26.     The Chemical Accident Prevention Regulations separate covered processes into three categories, designated as "Program 1," "Program 2," and "Program 3." The Chemical

5

Accident Prevention Regulations set forth specific requirements for owners and operators of stationary sources with processes that fall within the different programs levels.

27.    At all times relevant to this Complaint, pursuant to 40 C.F.R. § 68.10(d) (and 40 C.F.R. § 68.10(i), effective as of February 19, 2019), the East Vealmoor Gas Plant, Benedum Gas Plant, and Shackelford Gas Plant, were subject to the Chemical Accident Prevention Regulations applicable to "Program 3" facilities within the meaning of 40 C.F.R. §§ 68.10(d) (and 40 C.F.R. § 68.10(i), effective as of February 19, 2019) and 68.12(d).

28.    At all times relevant to this Complaint before the April 2018 $H_2S$ Release, the Big Lake Treatment Plant was subject to the Chemical Accident Prevention Regulations applicable to "Program 1" facilities within the meaning of 40 C.F.R. §§ 68.10(b) (and 40 C.F.R. § 68.10(g), effective as of February 19, 2019) and 68.12(b).  After the April 14, 2018 Incident the Big Lake Treatment Plant became subject to the Chemical Accident Prevention Regulations applicable to "Program 3" facilities within the meaning of 40 C.F.R. §§ 68.10(d) (and 40 C.F.R. § 68.10(i), effective as of February 19, 2019) and 68.12(d).  At all times relevant to this Complaint, the Big Lake Treatment Plant was subject to the Occupational Safety Health Administration's process safety management standard at 29 C.F.R. § 1910.119.

**A.    The November 2015 Fire at the East Vealmoor Gas Plant**

29.    On November 1, 2015, a fire occurred at the East Vealmoor Gas Plant when a WTG Gas Processing, L.P. employee was attempting to re-light the facility's emergency flare. The flare's pilot light was malfunctioning, and the flare's flame was therefore unlit.  Unburned gas continued flowing to the flare and accumulated in the surrounding area until it reached flammable concentrations.  The employee did not ensure that gas was not flowing to the unlit flare before attempting to re-light it.  The employee also did not ensure that the air no longer

contained explosive concentrations of flammable gases.  The gas in the surrounding ambient air ignited, starting a fire that engulfed the employee's truck and severely burned the employee.  The injured worker, who was not wearing appropriate personal protective equipment ("PPE") while he was trying to re-light the flare, died the next day from his injuries.

30.     The November 2015 Fire released listed regulated substances and extremely hazardous substances into the ambient air, including, but not limited to, ethane, propane, isobutane, pentane, methane, isopentane, and butane.  The release of these listed regulated substances and extremely hazardous substances constituted an "accidental release" within the meaning of Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Chemical Accident Prevention Regulations.

31.     The November 2015 Fire met the accident history reporting criteria of 40 C.F.R. § 68.42(a).

**B.      The April 2018 H2S Release at the Big Lake Treatment Plant**

32.     On April 14, 2018, a Davis Gas Processing, Inc. employee at the Big Lake Treatment Plant opened a "check valve" while trying to troubleshoot a methanol metering pump and associated equipment at the facility's Acid Gas Compressor.  The employee was not properly trained to troubleshoot equipment in $H_2S$ service, such as the methanol metering pump, or in appropriate "Lock Out/Tag Out" procedures.  The opened check valve, which was later found to leak at routine operating pressures, released acid gas containing toxic $H_2S$ at levels that were immediately dangerous to life and health.  The employee was found unresponsive near the Acid Gas Compressor and could not be revived.

33.     The April 2018 $H_2S$ Release released $H_2S$ – a listed regulated substance and extremely hazardous substance – into the ambient air.  The release of $H_2S$ constituted an

"accidental release" within the meaning of Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Chemical Accident Prevention Regulations.

**C.      Fires at the Benedum Gas Plant in June and September 2015**

34.    On or about June 5, 2015, a heater unit ruptured at the Benedum Gas Plant, starting a fire that caused damage as far as 100 feet away from the heater.  Subject to a reasonable opportunity for investigation and discovery, the fire constituted an "accidental release" within the meaning of Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Chemical Accident Prevention Regulations.

35.    On or about September 21, 2015, a compressor unit at the Benedum Gas Plant caught fire, resulting in approximately $9.8 million in damages.  Subject to a reasonable opportunity for investigation and discovery, the fire constituted an "accidental release" within the meaning of Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Chemical Accident Prevention Regulations.

36.    The September 21, 2015 fire met the accident history reporting criteria of 40 C.F.R. § 68.42(a) because the fire caused significant property damage at the Benedum Gas Plant.

**D.      October 2012 Fire at the Shackelford Gas Plant**

37.    On or about October 4, 2012, the main compressor building at the Shackelford Gas Plant caught fire (the "October 2012 Fire").  Six-inch discharge piping in the building that ran from Compressor Unit #389 to the gas cooler failed, allowing flammable regulated substances or extremely hazardous substances to escape and ignite.  The fire caused extensive damage to Compressor Unit #389, Compressor Unit #3011, Compressor Unit #358, ancillary equipment, instrumentation and controls, piping and the metal building.  Heat radiating from the

fire also caused damage to Compressor Unit #345, a refrigeration compressor located in a separate building approximately 50 feet south of the main compressor building.

38.     Subject to a reasonable opportunity for investigation and discovery, the October 2012 Fire constituted an "accidental release" within the meaning of Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), and the Chemical Accident Prevention Regulations.

39.     The October 2012 Fire met the accident history reporting criteria of 40 C.F.R. § 68.42(a) because the fire caused significant property damage at the Shackelford Gas Plant.

## STATUTORY AND REGULATORY FRAMEWORK

### A.     The Clean Air Act's General Duty Clause

40.     The Clean Air Act's General Duty Clause applies to owners and operators of stationary sources that produce, process, handle, or store specific hazardous substances.  The General Duty Clause provides that these owners and operators:

> have a general duty . . . to identify hazards which may result from such releases [of any substance listed pursuant to Clean Air Act Section 112(r)(3) or any other extremely hazardous substance] using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

42 U.S.C. § 7412(r)(1).

41.     Extremely hazardous substances include regulated substances and chemicals on the list of extremely hazardous substances published pursuant to Section 302 of the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11002, at 40 C.F.R. Part 355, Appendices A and B.  Extremely hazardous substances also include other substances not listed or otherwise identified by any government agency that may cause death, injury or property damage as the result of short-term exposure associated with releases into the air.

9

42.     The term "accidental release" is defined by Clean Air Act Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), as "an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source."

**B.  Clean Air Act Section 112(r)(7) – Risk Management Program**

43.     Clean Air Act Section 112(r)(7)(A), 42 U.S.C. § 7412(r)(7)(A), authorized the EPA to promulgate regulations requiring a wide array of actions to prevent accidental releases of regulated substances.  *See* 42 U.S.C. § 7412(r)(7)(A) (authorizing the EPA to promulgate "release prevention, detection, and correction requirements which may include monitoring, record-keeping, reporting, training, vapor recovery, secondary containment, and other design, equipment, work practice, and operational requirements").

44.     Clean Air Act Section 112(r)(7)(B), 42 U.S.C. § 7412(r)(7)(B), requires owners or operators of stationary sources at which a regulated substance is present in more than a threshold quantity to prepare and implement a "Risk Management Plan."   These plans are intended to help facility operators "detect and prevent or minimize accidental releases of [hazardous regulated] substances from the stationary source, and to provide a prompt emergency response to any such releases in order to protect human health and the environment."  42 U.S.C. § 7412(r)(7)(B).

45.     Risk Management Plans must be registered with the EPA in the form and manner that the EPA requires.  *See* 42 U.S.C. § 7412(r)(7)(B)(iii); *see also* 40 C.F.R. § 68.190(a).  Risk Management Plans must be updated at least once every five years and after certain triggering events.  *See* 40 C.F.R. §§ 68.190(b) and 68.195(a).

**C.  The Chemical Accident Prevention Regulations**

46.     In accordance with Clean Air Act Section 112(r)(7), 42 U.S.C. § 7412(r)(7), the EPA promulgated the Chemical Accident Prevention Regulations in 1994 at 40 C.F.R. Part 68.

10

47.     Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E), prohibits any person from operating a stationary source subject to the Clean Air Act's Risk Management Program and Chemical Accident Prevention Regulations in violation of such requirements.

48.     Pursuant to 40 C.F.R. § 68.10, the owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process must comply with the Chemical Accident Prevention Regulations.

49.     Pursuant to 40 C.F.R. § 68.12, the owner or operator of a stationary source with a process subject to the "Program 3" requirements – the most stringent set – of the Chemical Accident Prevention Regulations must, among other things, comply with the prevention requirements of 40 C.F.R. §§ 68.65 – 68.87.

50.     The Program 3 requirements in the Chemical Accident Prevention Regulations cover a variety of topics governing the prevention of accidental releases of hazardous air pollutants, including:

    a.   Process hazard analysis (40 C.F.R. § 68.67),

    b.   Operating procedures (40 C.F.R. § 68.69),

    c.   Operator training (40 C.F.R. § 68.71),

    d.   Mechanical integrity (40 C.F.R. § 68.73),

    e.   Compliance audits (40 C.F.R. § 68.79),

    f.   Incident investigation (40 C.F.R. § 68.81), and

    g.   Employee participation (40 C.F.R. § 68.83).

**D.     The Clean Air Act's Enforcement Provisions**

51.     Clean Air Act Section 113(a)(3)(C), 42 U.S.C. § 7413(a)(3)(C), authorizes the EPA to bring a civil enforcement action under Clean Air Act Section 113(b) for the violations

alleged in this Complaint.  Civil enforcement actions may be based on "any information available" to the EPA that indicates that any person has violated or is in violation of, *inter alia*, Clean Air Act Section 112 or the Chemical Accident Prevention Regulations.  *See* 42 U.S.C. §§ 7412(r)(7)(E) and 7413(a)(3)(C).

52.    A civil action commenced under Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), may seek permanent or temporary injunctive relief.  *See* 42 U.S.C. § 7413(b).  The Court is also authorized to affirmatively "require compliance" and "award any other appropriate relief."  *See id*.

53.    A civil action commenced under Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), may also seek civil penalties of up to $37,500 per day for each violation that occurs between January 13, 2009 and November 2, 2015; and up to $102,638 per day for each violation that occurs after November 2, 2015 and that is assessed on or after December 23, 2020.  *See* 40 C.F.R. § 19.4 (listing annual inflation adjustments to maximum civil penalties).

### SPECIFIC ALLEGATIONS: EAST VEALMOOR GAS PLANT

### FIRST CLAIM FOR RELIEF
**(Clean Air Act Section 112(r)(1) – Failure to Design and Maintain a Safe Facility)**

54.    Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

55.    At all relevant times to the Complaint prior to the November 2015 Fire, subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to design and maintain the emergency flare at the East Vealmoor Gas Plant so as to be safe and free of recognized hazards.

56.    Subject to a reasonable opportunity for investigation and discovery, these hazards included, but were not limited to, the risk that operating and maintaining the emergency flare

without clear and adequate procedures for re-lighting the flare, including procedures to ensure that gas was not flowing to the flare and any ambient gas was dissipated before attempting to re-light the flare, would or was likely to result in an accidental release of regulated substances.

57.     Subject to a reasonable opportunity for investigation and discovery, these hazards also included, but were not limited to, the risk that allowing a WTG Gas Processing, L.P. employee that was not adequately trained to re-light the emergency flare, would or was likely to result in an accidental release of regulated substances.

58.     Subject to a reasonable opportunity for investigation and discovery, these hazards were recognized by WTG Gas Processing, L.P. and/or generally within the natural gas processing industry.

59.     Feasible means existed by which WTG Gas Processing, L.P. could have eliminated or reduced these hazards, such as by developing and implementing clear and adequate operating procedures for how to re-light the emergency flare.  Additional feasible means by which WTG Gas Processing, L.P. could have eliminated or reduced these hazards include taking steps to improve employee training (and verification that the training has been understood) on appropriate procedures to re-light the emergency flare.  Subject to a reasonable opportunity for investigation and discovery, these steps should have been taken to prevent November 2015 Fire.

60.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated the Clean Air Act's General Duty Clause, 42 U.S.C. § 7412(r)(1).

61.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

## SECOND CLAIM FOR RELIEF
**(Program 3 Prevention Program – Compliance Audits)**
**(40 C.F.R. § 68.79(a))**

62.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

63.     At all times relevant to the Complaint, WTG Gas Processing, L.P. was required by 40 C.F.R. § 68.79(a) to certify at least every three years that it had evaluated compliance with the provisions of 40 C.F.R. Part 68, Subpart D at the East Vealmoor Gas Plant in order to verify that the plant's procedures and practices developed under 40 C.F.R. Part 68, Subpart D were adequate and being followed.

64.     Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P.'s most recent certification under 40 C.F.R. § 68.79(a) was submitted in 2017. Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. was required to submit a certification under 40 C.F.R. § 68.79(a) by no later than December 31, 2020.

65.     To date, WTG Gas Processing, L.P. has not submitted the triennial certification required by 40 C.F.R. § 68.79(a) for the East Vealmoor Gas Plant.

66.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.79(a) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

67.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

## THIRD CLAIM FOR RELIEF
**(Program 3 Prevention Program – Process Hazard Analysis)**
**(40 C.F.R. § 68.67(e) and (g))**

68.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

69.     At all times relevant to the Complaint, 40 C.F.R. § 68.67(e) required WTG Gas Processing, L.P. to "establish a system to…assure that the recommendations [from a process hazard analysis] are resolved in a timely manner and that the resolution is documented; document what actions are to be taken…[and] communicate the actions to operating, maintenance and other employees whose work assignments are in the process and who may be affected by the recommendations or actions."

70.     At all times relevant to the Complaint, 40 C.F.R. § 68.67(g) required WTG Gas Processing, L.P. to retain the documented resolution of recommendations from a process hazard analysis revalidation "for the life of the process."

71.     In 2010, WTG Gas Processing, L.P. performed a revalidation of the process hazard analysis for the East Vealmoor Gas Plant.  During an EPA inspection of the East Vealmoor Gas Plant in June 2016, WTG Gas Processing, L.P. failed to provide adequate documentation that all of the findings and recommendations from the 2010 process hazard analysis revalidation had been addressed, resolved, scheduled, or communicated to affected employees.  Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to retain this documentation since at least October 10, 2013.

72.     Subject to a reasonable opportunity for investigation and discovery, since at least October 10, 2013, WTG Gas Processing, L.P. failed to establish the system required by 40 C.F.R. § 68.67(e) and/or failed to retain the documentation required by 40 C.F.R. § 68.67(g).

73.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.67(e) and/or (g) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

74.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

### FOURTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Operating Procedures)
### (40 C.F.R. § 68.69(a)(1) and (a)(3))

75.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

76.     At all times relevant to the Complaint, 40 C.F.R. § 68.69(a)(1) required WTG Gas Processing, L.P. to develop and implement written operating procedures that provided clear instructions for safely operating the emergency flare at the East Vealmoor Gas Plant during each of the operating phases listed in 40 C.F.R. § 68.69(a)(1).

77.     At all times relevant to the Complaint, 40 C.F.R. § 68.69(a)(3)(ii) required WTG Gas Processing, L.P. to develop and implement written operating procedures that provided clear instructions at the East Vealmoor Gas Plant mandating the precautions necessary to prevent exposure to the hazards of the covered process, including the use of personal protective equipment.

78.     At all times relevant to the Complaint until approximately May 18, 2016, subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. did not have adequate written operating procedures that provided clear instruction for safely re-lighting the emergency flare at the East Vealmoor Gas Plant, as required by 40 C.F.R. § 68.69(a)(1).

79.     At all times relevant to the Complaint until approximately May 18, 2016, subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to implement clear written operating procedures at the East Vealmoor Gas Plant about the need to use personal protective equipment while operating process equipment containing flammable

regulated substances, such as the emergency flare.  40 C.F.R. § 68.69(a)(3)(ii) required WTG

Gas Processing, L.P. to do so.

80.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. § 68.69(a)(1), (a)(3)(ii), and Clean Air Act Section 112(r)(7)(E), 42 U.S.C.

§ 7412(r)(7)(E).

81.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment

of a civil penalty for each day of each violation.

### FIFTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Training)
### (40 C.F.R. § 68.71(c))

82.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

83.     At all times relevant to the Complaint, 40 C.F.R. § 68.71(c) required WTG Gas

Processing, L.P. to ascertain that each employee involved in operating a process at the East

Vealmoor Gas Plant had received and understood the training required by 40 C.F.R. § 68.71.  As

part of meeting this requirement, pursuant to 40 C.F.R. § 68.71(c), WTG Gas Processing, L.P.

had to prepare a record which contains the identity of each employee who received the training,

the date of training, and "the means used to verify that the employee understood the training."

84.     For at least one employee at the East Vealmoor Gas Plant, WTG Gas Processing,

L.P.'s records for an October 6, 2014 training failed to document the means used to verify that

the employee had understood the training.

85.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. § 68.71(c) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

86.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

### SIXTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Mechanical Integrity)
### (40 C.F.R. § 68.73(d))

87.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

88.     At all times relevant to the Complaint, 40 C.F.R. § 68.73(d)(1) required WTG Gas Processing, L.P. to conduct inspections and tests on process equipment at the East Vealmoor Gas Plant, including the propane vessel (Identification Number 0060-1-137).  At all times relevant to the Complaint, 40 C.F.R. § 68.73(d)(4) required WTG Gas Processing, L.P. to document each inspection and test performed on process equipment at the East Vealmoor Gas Plant, including the propane vessel (Identification Number 0060-1-137).

89.     At all times relevant to the Complaint until approximately June 28, 2016, subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to inspect or test the propane vessel (Identification Number 0060-1-137) at the East Vealmoor Gas Plant.  Alternatively, at all times relevant to the Complaint until approximately June 28, 2016, WTG Gas Processing, L.P. failed to document that it had inspected or tested the propane vessel (Identification Number 0060-1-137) at the East Vealmoor Gas Plant.

90.     During an EPA inspection of the East Vealmoor Gas Plant in June 2016, the propane vessel (Identification Number 0060-1-137) at the East Vealmoor Gas Plant was found to be leaking flammable regulated substances.

18

91.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.73(d)(1) and/or (d)(4) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

92.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

### SEVENTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Mechanical Integrity)
### (40 C.F.R. § 68.73(e))

93.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

94.     At all times relevant to the Complaint, 40 C.F.R. § 68.73(e) required WTG Gas Processing, L.P. to correct deficiencies that rendered process equipment to be outside acceptable limits.  WTG Gas Processing, L.P. was required to correct these deficiencies before further use of the equipment or in a safe and timely manner.

95.     On or about October 31 and November 1, 2015, WTG Gas Processing, L.P. continued to use the still reflux accumulator at the East Vealmoor Gas Plant, which routed flammable gases to the emergency flare, even though the pilot light for the emergency flare was malfunctioning and there was no flame present at the flare.  Subject to a reasonable opportunity for investigation and discovery, the emergency flare was outside acceptable limits and WTG Gas Processing, L.P. failed to correct this deficiency in a safe and timely manner or before further use of the still reflux accumulator and emergency flare.

96.     On or about October 31 and November 1, 2015, subject to a reasonable opportunity for investigation and discovery, the natural gas liquids treater at the East Vealmoor Gas Plant was outside acceptable limits and producing "off-spec" natural gas liquids product.

WTG Gas Processing, L.P. routed this off-spec natural gas liquid product to the malfunctioning emergency flare. Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to correct the deficiencies at the natural gas liquids treater in a safe and timely manner or before its further use.

97.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.73(e) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

98.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

**EIGHTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Incident Investigation)**
**(40 C.F.R. § 68.81(e))**

99.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

100.    At all times relevant to the Complaint, 40 C.F.R. § 68.81(e) required WTG Gas Processing, L.P. to establish a system to promptly address and resolve the findings and recommendations of an "incident investigation" within the meaning of 40 C.F.R. § 68.81(a).

101.    Subject to a reasonable opportunity for investigation and discovery, for at least approximately six months after the November 2015 Fire, WTG Gas Processing, L.P. failed to address and resolve at least three findings or recommendations from the incident investigation report from the November 2015 Fire. These recommendations included reviewing with WTG Gas Processing, L.P. employees the proper procedures for lighting or re-lighting a flare, the requirements to wear PPE at the East Vealmoor Gas Plant, and the plant areas where smoking is prohibited. WTG Gas Processing, L.P. failed to promptly address and resolve at least these three findings and recommendations of the November 2015 Fire incident investigation report.

102.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. § 68.81(e) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

103.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment

of a civil penalty for each day of each violation.

### NINTH CLAIM FOR RELIEF
### (Risk Management Plan – Required Updates)
### (40 C.F.R. § 68.190(b)(1))

104.    Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

105.    At all times relevant to the Complaint, 40 C.F.R. § 68.190(b)(1) required WTG

Gas Processing, L.P. to revise and update the Risk Management Plan for the East Vealmoor Gas

Plant at least once every five years from the date of the plan's initial submission or the date of its

most recent update.

106.    WTG Gas Processing, L.P. failed to revise or update the January 31, 2011 Risk

Management Plan – the most recent update for the East Vealmoor Gas Plant – until

approximately June 14, 2016.  WTG Gas Processing, L.P. therefore failed to revise and update

the Risk Management Plan for the East Vealmoor Gas Plant at least once every five years.

107.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. § 68.190(b)(1) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

108.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to the assessment of a civil penalty

for each day of each violation.

## TENTH CLAIM FOR RELIEF
### (Risk Management Plan – Required Corrections)
### (40 C.F.R. § 68.195(a))

109.     Paragraphs 1 - 31 and 40 - 53 are incorporated herein by reference.

110.     After the November 2015 Fire, WTG Gas Processing, L.P. failed to update the

Risk Management Plan for the East Vealmoor Gas Plant with the information required by 40

C.F.R. §§ 68.168 (five-year accident history) and 68.175(l) (incident investigation status) within

six months of that accidental release, as required by 40 C.F.R. § 68.195(a).

111.     WTG Gas Processing, L.P. failed to update the Risk Management Plan for the

East Vealmoor Gas Plant with information about the November 2015 Fire required by 40 C.F.R.

§§ 68.42(b) and 68.195(a) until approximately June 14, 2016.

112.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. §§ 68.42(b) and 68.195(a) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C.

§ 7412(r)(7)(E).

113.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to the assessment of a civil penalty

for each day of each violation.

## SPECIFIC ALLEGATIONS: BIG LAKE TREATMENT PLANT

## ELEVENTH CLAIM FOR RELIEF
### (Clean Air Act Section 112(r)(1) – Failure to Design and Maintain a Safe Facility)

114.     Paragraphs 1 - 28, 32 - 33, and 40 - 53 are incorporated herein by reference.

115.     At all relevant times to the Complaint prior to the April 2018 $H_2S$ Release, subject

to a reasonable opportunity for investigation and discovery, Davis Gas Processing, Inc. failed to

design and maintain the Acid Gas Compressor at the Big Lake Treatment Plant, including the

methanol metering pump, associated valves, and related components, so as to be safe and free of recognized hazards.

116.    Subject to a reasonable opportunity for investigation and discovery, these hazards included, but were not limited to, the risk that maintaining and operating a check valve at the methanol metering pump that leaked $H_2S$ at typical operating pressures would or was likely to result in an accidental release of regulated substances.

117.    Subject to a reasonable opportunity for investigation and discovery, these hazards also included, but were not limited to, the risk that allowing a Davis Gas Processing, Inc. employee that was not properly trained to troubleshoot equipment in $H_2S$ service and in appropriate "Lock Out/Tag Out" procedures, such as American National Standards Institute/American Society of Safety Engineer's *2017 Accepted Practices for Hydrogen Sulfide Training Programs*, would or was likely to result in an accidental release of regulated substances.

118.    Subject to a reasonable opportunity for investigation and discovery, these hazards were recognized by Davis Gas Processing, Inc. and/or generally within the natural gas processing industry.

119.    Subject to a reasonable opportunity for investigation and discovery, feasible means existed by which Davis Gas Processing, Inc. could have eliminated or reduced these hazards, such as by taking steps to improve the leak detection and repair practices at the Big Lake Treatment Plant, as well as by taking steps to improve employee training (and verification that the training has been understood) on appropriate Lock Out/Tag Out procedures and on troubleshooting equipment in $H_2S$ service for employees engaged in this function.  Subject to a

reasonable opportunity for investigation and discovery, these steps should have been taken to prevent the April 2018 $H_2S$ Release.

120.    As a result of these acts or omissions, Davis Gas Processing, Inc. violated the Clean Air Act's General Duty Clause, 42 U.S.C. § 7412(r)(1).

121.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject Davis Gas Processing, Inc. to injunctive relief and the assessment of a civil penalty for each day of each violation.

**TWELFTH CLAIM FOR RELIEF**
**(Risk Management Plan – Required Updates)**
**(40 C.F.R. § 68.190(b)(7))**

122.    Paragraphs 1 - 28, 32 - 33, and 40 - 53 are incorporated herein by reference.

123.    At all times relevant to the Complaint, 40 C.F.R. § 68.190(b)(7) required Davis Gas Processing, Inc. to update the Risk Management Plan for the Big Lake Treatment Plant within six months of a change that altered the program level of Chemical Accident Prevention Regulations that applied to any covered process at the plant.

124.    After the April 2018 $H_2S$ Release, the Big Lake Treatment Plant was no longer eligible for Program 1 requirements.  Under 40 C.F.R. § 68.10(b) (and 40 C.F.R. § 68.10(g), effective as of February 19, 2019), a covered process is no longer eligible for Program 1 requirements if an accidental release of a regulated substance from the process leads to death or injury.

125.    After the April 2018 $H_2S$ Release, 40 C.F.R. § 68.10(e) (and 40 C.F.R. § 68.10(j), effective as of February 19, 2019) and 40 C.F.R. § 68.190(b)(7) required Davis Gas Processing, Inc. to update the facility's Risk Management Plan within six months to reflect that it was subject to the Chemical Accident Prevention Regulations' Program 3 requirements.

126.     From approximately October 14, 2018 until April 1, 2021 (when the Big Lake Treatment Plant was shut down), Davis Gas Processing, Inc. failed to update the facility's Risk Management Plan to reflect that it was subject to the Chemical Accident Prevention Regulations' Program 3 requirements, as required by 40 C.F.R. § 68.10(e) (and 40 C.F.R. § 68.10(j), effective as of February 19, 2019) and 40 C.F.R. § 68.190(b)(7).

127.     As a result of these acts or omissions, Davis Gas Processing, Inc. violated 40 C.F.R. § 68.190(b)(7) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

128.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject Davis Gas Processing, Inc. to the assessment of a civil penalty for each day of each violation.

## SPECIFIC ALLEGATIONS: BENEDUM GAS PLANT

### THIRTEENTH CLAIM FOR RELIEF
**(Program 3 Prevention Program – Process Hazard Analysis)**
**(40 C.F.R. § 68.67(e) and (g))**

129.     Paragraphs 1 - 28, 34 - 36, 40 - 53, and 69-70 are incorporated herein by reference.

130.     Subject to a reasonable opportunity for investigation and discovery, on approximately June 18, 2013 and June 20, 2016, WTG South Permian Midstream LLC performed initial or revalidation process hazard analyses for the Benedum Gas Plant.

131.     During an EPA inspection of the Benedum Gas Plant in September 2017, WTG South Permian Midstream LLC failed to provide adequate documentation of any findings and recommendations from the June 18, 2013 and June 20, 2016 initial or revalidation process hazard analyses, or of adequate documentation that any findings and recommendations had been addressed, resolved, scheduled, or communicated to affected employees.

132.    Subject to a reasonable opportunity for investigation and discovery, since at least June 18, 2013, WTG South Permian Midstream LLC failed to establish the system required by 40 C.F.R. § 68.69(e) and/or failed to retain the documentation required by 40 C.F.R. § 68.69(g).

133.    As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.67(e) and/or (g) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

134.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

**FOURTEENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Operating Procedures)**
**(40 C.F.R. § 68.69(a)(1))**

135.    Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

136.    At all times relevant to the Complaint, 40 C.F.R. § 68.69(a)(1) required WTG South Permian Midstream LLC to develop and implement written operating procedures that provided clear instructions for safely operating the cryogenic plant at the Benedum Gas Plant during each of the operating phases listed in 40 C.F.R. § 68.69(a)(1).

137.    At all times relevant to the Complaint until approximately March 16, 2018, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC did not have adequate written operating procedures that provided clear instruction for one or more of the operating phases listed in 40 C.F.R. § 68.69(a)(1) for the cryogenic plant at the Benedum Gas Plant.

138.    As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.69(a)(1) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

139.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

**FIFTEENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Operating Procedures)**
**(40 C.F.R. § 68.69(c))**

140.    Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

141.    At all times relevant to the Complaint, 40 C.F.R. § 68.69(c) required WTG South Permian Midstream LLC to certify annually that the operating procedures for the Benedum Gas Plant were current and accurate.

142.    Subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to annually certify that its operating procedures were current and accurate for calendar years 2013 through 2016.  Subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to submit an accurate certification that its operating procedures were current and accurate for calendar year in 2017.

143.    As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.69(c) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

144.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

## SIXTEENTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Operating Procedures)
### (40 C.F.R. § 68.69(d))

145.     Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

146.     At all times relevant to the Complaint, 40 C.F.R. § 68.69(d) required WTG South Permian Midstream LLC to develop and implement safe work practices at the Benedum Gas Plant to provide for the control of hazards during operations such as: Lockout/Tagout and opening process equipment or piping.

147.     On or about August 8, 2017, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to implement adequate safe work practices at the Benedum Gas Plant as required by 40 C.F.R. § 68.69(d) when an "API crew" removed a blind off a flare header.  Once the blind was removed, the flare header released flammable gases which ignited and burned a nearby worker.

148.     As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.69(d) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

149.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

## SEVENTEENTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Training)
### (40 C.F.R. § 68.71)

150.     Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

151.     At all times relevant to the Complaint, 40 C.F.R. § 68.71(b) required WTG South Permian Midstream LLC to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process at the Benedum Gas Plant.  The

28

purpose of refresher training is to assure that employees understand and adhere to the current operating procedures of the process. *See* 40 C.F.R. § 68.71(b).

152.    Pursuant to 40 C.F.R. § 68.71(c), WTG South Permian Midstream LLC had to prepare a record which contains the identity of each employee who received refresher training, the date of training, and the means used to verify that each employee understood the training.

153.    During an EPA inspection of the Benedum Gas Plant in September 2017, WTG South Permian Midstream LLC was unable to provide records that it had provided refresher training to each employee within at least the preceding three years.

154.    At all times relevant to the Complaint until approximately January 2018, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to provide refresher training to its operators at the Benedum Gas Plant within at least the preceding three years.  Alternatively, at all times relevant to the Complaint until approximately January 2018, WTG South Permian Midstream LLC failed to prepare adequate documentation of the employees who received refresher training, the dates of training, and the means used to verify that the employees understood the training.

155.    As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.71(b) and/or 68.71(c) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

156.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

**EIGHTEENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Mechanical Integrity)**
**(40 C.F.R. § 68.73(d)(2)-(d)(4))**

157.    Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

158.    At all times relevant to the Complaint, 40 C.F.R. § 68.73(d)(2) required WTG South Permian Midstream LLC to have mechanical integrity inspection and testing procedures at the Benedum Gas Plant that followed recognized and generally accepted good engineering practices.

159.    At all times relevant to the Complaint, 40 C.F.R. § 68.73(d)(3) required WTG South Permian Midstream LLC's mechanical integrity inspection and testing procedures at the Benedum Gas Plant to require inspections and tests of process equipment at a frequency that was consistent with applicable manufacturers' recommendations and good engineering practices, and more frequently if determined to be necessary by prior operating experience.  At all times relevant to the Complaint, 40 C.F.R. § 68.73(d)(4) required WTG South Permian Midstream LLC to document each inspection and test performed on process equipment at the Benedum Gas Plant.

160.    During an EPA inspection of the Benedum Gas Plant in September 2017, WTG South Permian Midstream LLC was unable to provide records that it had inspected or tested the natural gas liquids vessel (Identification Number: PV 1607) and propane storage tank (Identification Number: PV23) at the Benedum Gas Plant consistent with American Petroleum Institute (API) Recommended Practice 510 regarding inspections of pressure vessels.

161.    At all times relevant to the Complaint, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to inspect and test the natural gas liquids vessel (Identification Number: PV 1607) and propane storage tank

(Identification Number: PV23) at the Benedum Gas Plant consistent with API Recommended Practice 510.  Alternatively, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to inspect and test the natural gas liquids vessel (Identification Number: PV 1607) and propane storage tank (Identification Number: PV23) at the Benedum Gas Plant at a frequency that was consistent with API Recommended Practice 510.

162.    Alternatively, at all times relevant to the Complaint, WTG South Permian Midstream LLC failed to document that it had inspected the natural gas liquids vessel (Identification Number: PV 1607) and propane storage tank (Identification Number: PV23) at the Benedum Gas Plant.

163.     As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.73(d)(2), (d)(3), and/or (d)(4) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

164.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

## NINTEENTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Mechanical Integrity)
### (40 C.F.R. § 68.73(e))

165.    Paragraphs 1 - 28, 34 - 36, 40 - 53, and 94 are incorporated herein by reference.

166.    At all times relevant to the Complaint until approximately June 5, 2015, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to correct a non-operational blind below a relief valve at the Benedum Gas Plant's heater unit before further use of the heater unit or in a safe and timely manner.

167.    At all times relevant to the Complaint until approximately September 21, 2015, subject to a reasonable opportunity for investigation and discovery, WTG South Permian Midstream LLC failed to correct equipment deficiencies at the compressor unit at the Benedum Gas Plant, including a leaking starter, broken casing on the starting solenoid, and missing flange bolts on the suction bottle on the second stage of compressor number 3, as well as holes in piping on compressor number 8.

168.    During an EPA inspection of the Benedum Gas Plant in September 2017, WTG South Permian Midstream LLC was unable to provide records that it had inspected the blind below the relief valve at the heater unit or the pieces of equipment at the compressor unit referenced in the previous paragraph.

169.    As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.73(d)(4) and/or (e) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

170.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

### TWENTIETH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Compliance Audits)
### (40 C.F.R. § 68.79(d))

171.    Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

172.    At all times relevant to the Complaint, 40 C.F.R. § 68.79(d) required WTG South Permian Midstream LLC to promptly determine and document an appropriate response to each of the findings of a compliance audit required by 40 C.F.R. § 68.79, as well as to document that deficiencies have been corrected.

32

173.     Subject to a reasonable opportunity for investigation and discovery, more than one year after a June 2016 compliance audit at the Benedum Gas Plant, WTG South Permian Midstream LLC failed to determine and document an appropriate response to findings from the compliance audit, or that the deficiencies had been corrected, including findings with respect to operating procedures and mechanical integrity.

174.     As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.79(d) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

175.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Employee Participation)**
**(40 C.F.R. § 68.83(b))**

176.     Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

177.     At all times relevant to the Complaint, 40 C.F.R. § 68.83(b) required WTG South Permian Midstream LLC to consult with its employees, as well as with any representatives of its employees, at the Benedum Gas Plant on the conduct and development of process hazards analyses.

178.     During an EPA inspection of the Benedum Gas Plant in September 2017, WTG South Permian Midstream LLC was unable to provide records that it had notified or consulted with its employees on the June 2016 process hazard analysis at the Benedum Gas Plant.

179.     As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. § 68.83(b) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

180.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to injunctive relief and the assessment of a civil penalty for each day of each violation.

## TWENTY-SECOND CLAIM FOR RELIEF
### (Risk Management Plan – Required Corrections)
### (40 C.F.R. § 68.195(a))

181.     Paragraphs 1 - 28, 34 - 36, and 40 - 53 are incorporated herein by reference.

182.     After the September 21, 2015 fire, WTG South Permian Midstream LLC failed to update the Risk Management Plan for the Benedum Gas Plant with the information required by 40 C.F.R. § 68.168 (five-year accident history) and 68.175(l) (incident investigation status) within six months of that accidental release, as required by 40 C.F.R. § 68.195(a).

183.     WTG South Permian Midstream LLC failed to update the Risk Management Plan for the Benedum Gas Plant with information about the September 21, 2015 fire required by 40 C.F.R. §§ 68.42(b) and 68.195(a) until approximately September 13, 2017.

184.     As a result of these acts or omissions, WTG South Permian Midstream LLC violated 40 C.F.R. §§ 68.42(b) and 68.195(a) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

185.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG South Permian Midstream LLC to the assessment of a civil penalty for each day of each violation.

## SPECIFIC ALLEGATIONS:  SHACKELFORD GAS PLANT

### TWENTY-THIRD CLAIM FOR RELIEF
(Program 3 Prevention Program – Process Hazard Analysis)
(40 C.F.R. § 68.67(e))

186.   Paragraphs 1 - 28, 37 - 39, 40 - 53, and 69 are incorporated herein by reference.

187.   In December 2016, WTG Gas Processing, L.P. performed a process hazard analysis for the Shackelford Gas Plant.  During an EPA inspection of the Shackelford Gas Plant in October 2017, WTG Gas Processing, L.P. provided documentation indicating that action items from the December 2016 process hazard analysis related to a pressure safety valve had been completed when the actions items, subject to a reasonable opportunity for investigation and discovery, had not yet been completed.  In addition, an action item related to the "Glycol Flash Tank PSC" was not yet completed as of the October 2017 EPA inspection.

188.   Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to establish a system to "assure that the recommendations [from a process hazard analysis] are resolved in a timely manner and that the resolution is documented."  WTG Gas Processing, L.P. also failed to complete actions items from the process hazard analysis as soon as possible.

189.   As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.67(e) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

190.   As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

## TWENTY-FOURTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Operating Procedures)
### (40 C.F.R. § 68.69(a)(1))

191.     Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

192.     At all times relevant to the Complaint, 40 C.F.R. § 68.69(a)(1) required WTG Gas

Processing, L.P. to develop and implement written operating procedures that provided clear

instructions for safely operating the flare at the Shackelford Gas Plant during each of the

operating phases listed in 40 C.F.R. § 68.69(a)(1).

193.     At all times relevant to the Complaint until approximately March 16, 2018,

subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P.

did not have written operating procedures for the flare at the Shackelford Gas Plant.

194.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. § 68.69(a)(1) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

195.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment

of a civil penalty for each day of each violation.

## TWENTY-FIFTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Operating Procedures)
### (40 C.F.R. § 68.69(c))

196.     Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

197.     At all times relevant to the Complaint, 40 C.F.R. § 68.69(c) required WTG Gas

Processing, L.P. to certify annually that the operating procedures for the Shackelford Gas Plant

were current and accurate.

198.     Subject to a reasonable opportunity for investigation and discovery, WTG Gas

Processing, L.P. failed to annually certify that its operating procedures were current and accurate

for calendar years 2013 through 2016.  Subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to submit an accurate certification that its operating procedures were current and accurate for calendar year in 2017.

199.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.69(c) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

200.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

## TWENTY-SIXTH CLAIM FOR RELIEF
### (Program 3 Prevention Program – Training)
### (40 C.F.R. § 68.71)

201.    Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

202.    At all times relevant to the Complaint, 40 C.F.R. § 68.71(b) required WTG Gas Processing, L.P. to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process at the Shackelford Gas Plant.  The purpose of refresher training is to assure that employees understand and adhere to the current operating procedures of the process.  *See* 40 C.F.R. § 68.71(b).

203.    Pursuant to 40 C.F.R. § 68.71(c), WTG Gas Processing, L.P. had to prepare a record which contains the identity of each employee who received refresher training, the date of training, and the means used to verify that each employee understood the training.

204.    During an EPA inspection of the Shackelford Gas Plant in October 2017, WTG Gas Processing, L.P. was unable to provide records that it had provided refresher training to each employee within at least the preceding three years.

205.    At all times relevant to the Complaint until approximately December 2017, subject to a reasonable opportunity for investigation and discovery, WTG Gas Processing, L.P. failed to provide refresher training to its operators at the Shackelford Gas Plant within at least the preceding three years.  Alternatively, at all times relevant to the Complaint until approximately December 2017, WTG Gas Processing, L.P. failed to prepare adequate documentation of the employees who received refresher training, the dates of training, and the means used to verify that the employees understood the training.

206.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.71(b) and/or 68.71(c) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

207.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

**TWENTY-SEVENTH CLAIM FOR RELIEF**
**(Program 3 Prevention Program – Compliance Audits)**
**(40 C.F.R. § 68.79(d))**

208.    Paragraphs 1 - 28, 37 - 39, 40 - 53, and 172 are incorporated herein by reference.

209.    Subject to a reasonable opportunity for investigation and discovery, more than one year after a December 2016 compliance audit at the Shackelford Gas Plant, WTG Gas Processing, L.P. failed to determine and document an appropriate response to findings from the compliance audit, including findings with respect to operating procedures and mechanical integrity, and/or failed to document that the deficiencies had been corrected.

210.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.79(d) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

211.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to injunctive relief and the assessment of a civil penalty for each day of each violation.

### TWENTY-EIGHTH CLAIM FOR RELIEF
#### (Risk Management Plan – Updates)
#### (40 C.F.R. § 68.190(b)(1))

212.     Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

213.     At all times relevant to the Complaint, 40 C.F.R. § 68.190(b)(1) required WTG Gas Processing, L.P. to revise and update the Risk Management Plan for the Shackelford Gas Plant at least once every five years from the date of the plan's initial submission or the date of its most recent update.

214.     WTG Gas Processing, L.P. failed to revise or update the November 6, 2008 Risk Management Plan – the most recent update for the Shackelford Gas Plant – until approximately September 29, 2017.  WTG Gas Processing, L.P. therefore failed to revise and update the Risk Management Plan for the Shackelford Gas Plant at least once every five years.

215.     As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.190(b)(1) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

216.     As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to the assessment of a civil penalty for each day of each violation.

**TWENTY-NINTH CLAIM FOR RELIEF**
**(Risk Management Plan – Required Corrections)**
**(40 C.F.R. § 68.195(a))**

217.    Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

218.    After the October 2012 Fire, WTG Gas Processing, L.P. failed to update the Risk

Management Plan for the Shackelford Gas Plant with the information required by 40 C.F.R.

§§ 68.168 (five-year accident history) and 68.175(l) (incident investigation status) within six

months of that accidental release, as required by 40 C.F.R. § 68.195(a).

219.    WTG Gas Processing, L.P. failed to update the Risk Management Plan for the

Shackelford Gas Plant with information about the October 2012 Fire, as required by 40 C.F.R.

§§ 68.42(b) and 68.195(a), until approximately September 29, 2017.

220.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40

C.F.R. §§ 68.42(b) and 68.195(a) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C.

§ 7412(r)(7)(E).

221.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations

in this Claim for Relief subject WTG Gas Processing, L.P. to the assessment of a civil penalty

for each day of each violation.

**THIRTIETH CLAIM FOR RELIEF**
**(Risk Management Plan – Required Corrections)**
**(40 C.F.R. § 68.195(b))**

222.    Paragraphs 1 - 28, 37 - 39, and 40 - 53 are incorporated herein by reference.

223.    At all times relevant to the Complaint, 40 C.F.R. § 68.195(b) required WTG Gas

Processing, L.P. to revise and update the Risk Management Plan for the Shackelford Gas Plant

within one month of any change in the emergency contact information required by 40 C.F.R.

§ 68.160(b)(6).  40 C.F.R. § 68.160(b)(6) requires the name, title, telephone number, 24-hour

40

telephone number, and, as of June 21, 2004, the e-mail address (if an e-mail address exists) of the emergency contact.

224.    On or about January 31, 2011, a new employee took over as the emergency contact for the Shackelford Gas Plant.  WTG Gas Processing, L.P. failed to update the Risk Management Plan for the Shackelford Gas Plant with the information required by 40 C.F.R. § 68.160(b)(6) for the new emergency contact until September 29, 2017.

225.    As a result of these acts or omissions, WTG Gas Processing, L.P. violated 40 C.F.R. § 68.195(b) and Clean Air Act Section 112(r)(7)(E), 42 U.S.C. § 7412(r)(7)(E).

226.    As provided in Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the violations in this Claim for Relief subject WTG Gas Processing, L.P. to the assessment of a civil penalty for each day of each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following:

a)    Enter a final judgment finding that the Defendants are liable for the violations alleged in the Complaint;

b)    Order the Defendants to take all measures necessary to immediately comply with the Clean Air Act requirements cited in this Complaint and prevent any future violations of these requirements;

c)    Permanently enjoin the Defendants from operating the Defendants' Natural Gas Plants except in accordance with the Clean Air Act;

41

d)      Order the Defendants to take all necessary and appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by their alleged Clean Air Act violations;

e)      Assess a civil penalty against each Defendant of up to $37,500 for day of each violation of the Clean Air Act occurring after January 12, 2009 and through November 2, 2015; and up to $102,638, as adjusted annually at 40 C.F.R. § 19.4, for each day of each violation of the Clean Air Act occurring after November 2, 2015; and

f)      Award the United States its costs and expenses incurred in this action, and order any other just and proper relief.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

STEVEN D. SHERMER
District of Columbia Bar No. 486394
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
202-514-1134 (Phone)
Steven.Shermer@usdoj.gov

PRERAK SHAH
Acting United States Attorney
Northern District of Texas

42

Ann Haag
Assistant United States Attorney
Northern District of Texas
Lubbock Division
1205 Texas Ave., Suite 700
Lubbock, Texas  79401
806-472-7397 (Phone)
Ann.Haag@usdoj.gov

**ATTORNEYS FOR THE UNITED STATES**

OF COUNSEL:

Courtney Carter
Assistant Regional Counsel
RCRA & Toxics Enforcement Branch
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, Texas 75270-2102